PEOPLE v JAMISON

Docket No. 297154. Submitted April 13, 2011, at Detroit. Decided April
26, 2011, at 9:15 a.m. Leave to appeal denied, 490 Mich 934.

Pecola M. Jamison was convicted by an Oakland Circuit Court jury of
assault with intent to do great bodily harm less than murder and
possession of a firearm during the commission of a felony. The
court, Rudy J. Nichols, J., sentenced defendant to a prison term of
1 to 10 years for the assault conviction and the mandatory 2-year
term for felony-firearm, to be served consecutively. When scoring
the sentencing guidelines, the court found that 10 points were
properly assessed for offense variable (OV) 10, MCL 777.41 (victim
vulnerability), because defendant and the victim had a domestic
relationship. Defendant appealed.

The Court of Appeals held:

MCL 777.41(1)(b) requires the assessment of 10 points for
OV 10 when the defendant exploited a domestic relationship. To
qualify as a "domestic relationship," there must be a familial or
cohabitating relationship. While it is undisputed that defendant
and the victim had been involved in a dating relationship in the
past and the victim had been allowed to keep some clothing at
the defendant's house, they did not share a domicile and were
not related. Thus, their relationship did not display the char-
acteristics needed to elevate their ordinary relationship to a
domestic relationship. Accordingly, the trial court erred by
assessing 10 points for OV 10. Resentencing was required
because the minimum sentence imposed exceeded the guidelines
recommendation for defendant's properly calculated offense
variable level.

Sentence vacated and case remanded for resentencing.

CRIMINAL LAW — SENTENCING GUIDELINES — OFFENSE VARIABLE 10 — DOMESTIC
RELATIONSHIPS.

Offense variable 10 of the sentencing guidelines relates to the
exploitation of vulnerable victims and requires an assessment of
10 points when a defendant exploits a domestic relationship; to
qualify as a "domestic relationship," there must be a familial or
cohabitating relationship; a current or former dating relationship

alone, without these additional characteristics, is not enough warrant the assessment of 10 points for this variable (MCL 777.40[1][6]).

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Jessica R. Cooper*, Prosecuting Attorney, and *Thomas R. Grden*, Assistant Prosecuting Attorney, for the people.

*Gerald Ferry* for defendant.

Before: BECKERING, P.J., and WHITBECK and M. J. KELLY, JJ.

PER CURIAM. A jury convicted defendant, Pecola Jamison, of assault with intent to do great bodily harm less than murder[1] and felony-firearm.[2] The trial court sentenced Jamison to a prison term of 1 to 10 years for assault with intent to do great bodily harm less than murder and the mandatory consecutive 2-year prison term for felony firearm. Jamison now appeals as of right. We vacate Jamison's sentence and remand to the trial court for resentencing.

### I. FACTS

Jamison and her boyfriend, Alexis Jenkins, dated from sometime in 2006 to the spring or early summer of 2007. In the winter of 2007, they engaged in consensual sexual relations, but Jenkins chose to end the relationship in early January 2008. Jenkins testified that Jamison was not happy about the breakup and that he changed his telephone number so that Jamison could not contact him. After that, Jenkins saw Jamison at a

---

[1] MCL 750.84.

[2] MCL 750.227b.

social gathering in March 2008 and then several times in traffic before a May 3, 2009, encounter.

Jenkins testified that on May 3, 2009, at approximately 4:00 p.m., he made eye contact with Jamison while they passed each other in traffic. Shortly thereafter, Jenkins noticed Jamison's vehicle in his rearview mirror. He testified that she was driving the vehicle erratically, swerving back and forth in the lane. Jenkins testified that Jamison's vehicle was so close to his that he had to either speed up or get out of her way to avoid a collision.

Jenkins testified that he then pulled over on a side street. He thought that Jamison might have wanted to talk to him. Jenkins testified that Jamison pulled her vehicle alongside his and that the vehicles were separated by about three feet. Before Jenkins had the opportunity to speak to Jamison, she pulled out a pistol, pointed it at his face, and fired. Jenkins drove away and went to the hospital, thinking that he might have been shot. After being examined by hospital staff, he was reassured that he was not injured. There was, however, a large bullet hole in the driver's side door. Police officers later removed a large caliber bullet from the driver's seat of Jenkins's vehicle. The next day, Jenkins filed for a personal protection order against Jamison in the Oakland Circuit Court.

A jury convicted Jamison of assault with intent to do great bodily harm less than murder and felony-firearm. The sentencing information report indicated the assessment of 10 points for offense variable (OV) 10 under the sentencing guidelines. Defense counsel objected to the OV 10 score, asserting that Jenkins and Jamison did not have the requisite domestic relationship to justify a score of 10 points. The trial court overruled the objec-

tion and sentenced Jamison on the basis of a total OV score of 40 points. Jamison now appeals.

## II. OFFENSE VARIABLE 10

### A. STANDARD OF REVIEW

A trial court has discretion to determine the number of points assigned for a particular offense variable, "provided that evidence of record adequately supports a particular score."[3] This Court will uphold a sentencing court's scoring decision if it is supported by record evidence.[4] However, we review de novo questions of law involving the proper construction or application of the statutory sentencing guidelines.[5] When a sentence is based on a scoring error, resentencing is required.[6]

### B. LEGAL STANDARDS

This Court must affirm a sentence that is within the legislative guidelines range unless the trial court erred in scoring the sentencing guidelines or relied on inaccurate information in determining the defendant's sentence.[7] The facts the trial court relied on when assessing points for a particular variable under the sentencing guidelines need not have been determined by the jury when rendering its verdict.[8] "Rather, all that is required is that evidence exists that is adequate to support a particular score."[9] This Court will uphold a sentencing court's

---

[3] *People v Hornsby*, 251 Mich App 462, 468; 650 NW2d 700 (2002).

[4] *People v Spanke*, 254 Mich App 642, 647; 658 NW2d 504 (2003).

[5] *People v Hegwood*, 465 Mich 432, 436; 636 NW2d 127 (2001).

[6] *People v Jackson*, 487 Mich 783, 792; 790 NW2d 340 (2010).

[7] MCL 769.34(10).

[8] *People v Williams*, 191 Mich App 269, 276; 477 NW2d 877 (1991).

[9] *Id.*

scoring decision if there is any record evidence to support it.[10]

OV 10 deals with the exploitation of vulnerable victims.[11] A sentencing court properly assesses 10 points for this variable if "[t]he offender exploited a victim's physical disability, mental disability, youth or agedness, or *a domestic relationship*, or the offender abused his or her authority status."[12]

### C. APPLYING THE STANDARDS

Jamison argues that there was no domestic relationship between her and Jenkins because the two had never shared a domicile, nor had they engaged in a familial or cohabitating relationship. Accordingly, Jamison contends that had OV 10 been properly scored, her total OV score would have been 30 points. Because Jamison's prior record variable score was 0, this would have lowered her minimum sentence range to 0 to 11 months.[13] Thus, she argues that her one-year minimum sentence was in excess of the guidelines range, entitling her to resentencing.[14]

In construing the statutory sentencing guidelines, courts must discern and give effect to the intent of the Legislature.[15] The process begins with an examination of the plain language of the statute.[16] When that language is unambiguous, Courts must "presume that the Legislature intended the meaning clearly

---

[10] *Spanke*, 254 Mich App at 647.

[11] MCL 777.40.

[12] MCL 777.40(1)(b) (emphasis added).

[13] See MCL 777.65.

[14] See *Jackson*, 487 Mich at 792.

[15] *People v Morey*, 461 Mich 325, 329-330; 603 NW2d 250 (1999).

[16] *Id.* at 330.

expressed—no further judicial construction is required or permitted, and the statute must be enforced as written."[17]

The sentencing guidelines do not define "domestic" or "domestic relationship." And this Court has not published an opinion addressing the meaning of the term "domestic relationship" in the context of OV 10. This Court has, however, interpreted the term in unpublished opinions, albeit with divergent conclusions. While these opinions are not binding precedent on this Court, we may consider them as instructive or persuasive.[18]

In *People v Davis*, a panel of this Court turned to the domestic assault statute for guidance on interpretation of the phrase "domestic relationship" as used in OV 10.[19] Under the domestic assault statute, a person is guilty of domestic assault if the person assaults "his or her spouse or former spouse, *an individual with whom he or she has or has had a dating relationship*, an individual with whom he or she has had a child in common, or a resident or former resident of his or her household."[20] "As used in this section, 'dating relationship' means frequent, intimate associations primarily characterized by the expectation of affectional involvement. This term does not include a casual relationship or an ordinary fraternization between 2 individuals in a business or social context."[21] The *Davis* panel held that because the victim and the defendant engaged in con-

---

[17] *Id.*

[18] MCR 7.215(C)(1); *Slater v Ann arbor Pub Sch Bd of Ed*, 250 Mich App 419, 432; 648 NW2d 205 (2002).

[19] *People v Davis*, unpublished opinion per curiam of the Court of Appeals, issued April 14, 2009 (Docket No. 280547), p 5.

[20] MCL 750.81(2) (emphasis added).

[21] MCL 750.81(6).

sensual sexual relations; the defendant often spent the night at the victim's apartment, keeping personal belongings there; and the defendant spent time with the victim's family, taking care of the victim's son when the victim was away, the pair maintained a domestic relationship.[22]

Using the *Davis* approach, we would conclude that Jamison formerly maintained a dating relationship with Jenkins because they *had* a previous dating relationship, after the relationship ended they had infrequent consensual sexual relations, and Jenkins kept some clothing at Jamison's residence. Therefore, if we were to adopt this interpretation, Jamison and Jenkins would have had a domestic relationship that merits a score of 10 points under OV 10. However, we find it significant that the defendant in *Davis* was convicted of domestic assault. This case is distinguishable in that the record here reflects that Jamison was convicted of assault with intent to do great bodily harm less than murder and, further, the prosecution did not even charge Jamison with the crime of domestic assault. Additionally, it would seem that under the *Davis* approach, neither the brevity of the relationship's duration nor its distant temporal nature is a limiting factor to designate a relationship as "domestic." Thus, we find application of the approach questionable here, in which Jamison and Jenkins had a fairly brief relationship that ended more than a year before the shooting incident.

In contrast to the *Davis* approach, several other panels of this Court have used the lay dictionary definition of "domestic" and concluded that there must be a "familial" or "cohabitating" relationship to qualify as

---

[22] *Davis*, unpub op at 5.

a domestic relationship.[23] As explained in these decisions, if a statute does not provide a definition for a particular term, courts must "give the term its plain and ordinary meaning."[24] "When determining the common, ordinary meaning of a word or phrase, consulting a dictionary is appropriate."[25] *Random House Webster's College Dictionary* (1997) defines "domestic" as "1. of or pertaining to the home, family, or household affairs. 2. devoted to home life." Under these definitions, a familial or cohabitating relationship characterizes a domestic relationship.

We do not believe that simply *any* type of dating relationship, past or present, meets the requirements of OV 10. If this were the case, the Legislature would merely have said "relationship" or "dating relationship" rather than "domestic relationship."[26] Thus, to qualify as a "domestic relationship," there must be a familial or cohabitating relationship. Further, contrary to the *Davis* analysis that adopted the domestic assault definition of "domestic relationship," we "cannot assume that the Legislature inadvertently omitted from

---

[23] See *People v Robbins*, unpublished opinion per curiam of the Court of Appeals, issued February 19, 2009 (Docket No. 280080); *People v Patrowic*, unpublished opinion per curiam of the Court of Appeals, issued March 6, 2007 (Docket No. 267864); *People v Counts*, unpublished opinion per curiam of the Court of Appeals, issued May 20, 2004 (Docket No. 246717); cf. *People v Montgomery*, unpublished opinion per curiam of the Court of Appeals, issued May 22, 2007 (Docket No. 269201) (relying on both the domestic assault statute and dictionary definitions to conclude that the defendant had a domestic, or familial, relationship with the victim because they had a child together in a case in which the defendant was convicted of domestic violence, MCL 750.81(2), and assessed 10 points under OV 10).

[24] *Title Office, Inc v Van Buren Co Treasurer*, 469 Mich 516, 522; 676 NW2d 207 (2004).

[25] *Id.*

[26] See *Counts*, unpub op at 3.

one statute the language that it placed in another statute, and then, on the basis of that assumption, apply what is not there."[27] Accordingly, we are not inclined to adopt the *Davis* panel's interpretation, as it implies a potentially overbroad application based on words that are not in the statute.

Thus, we conclude that Jenkins and Jamison did not have the requisite domestic relationship to warrant assessing 10 points for OV 10. The pair did not share a domicile, and they were not related. The prosecution nevertheless argues that such a relationship did exist, noting that at some point in the past Jenkins was allowed to keep various articles of clothing at Jamison's house. However, merely being permitted to keep *some* of one's belongings at a person's home does not establish a cohabitating relationship.[28] Therefore, Jamison and Jenkins' relationship did not display the characteristics needed to elevate their ordinary relationship to "domestic relationship" status.[29] Accordingly, the trial court erred by assessing 10 points for OV 10.

Jamison had a prior record variable level of zero points. Originally, her presentence investigation report showed a total OV score of 50 points. However, at sentencing, the parties stipulated that OV 17, for which 10 points had been assessed, should have received a score of zero points. For a class D offense,[30] an OV level of 40 points results in a recommended minimum sentence range of zero to 17 months.[31] Had points not been

---

[27] *Farrington v Total Petroleum, Inc*, 442 Mich 201, 210; 501 NW2d 76 (1993).

[28] See *Counts*, unpub op at 3.

[29] Because we conclude that Jamison and Jenkins did not have a domestic relationship, we refrain from determining the extent, if any, that it was exploited.

[30] See MCL 777.16d.

[31] MCL 777.65.

assessed for OV 10, Jamison's offense variable level would have been 30 points, and her minimum sentence range would have been zero to 11 months.[32] Because her minimum sentence of 1 year is in excess of the guidelines range, she is entitled to resentencing.[33]

We vacate the trial court's sentence for assault with intent to do great bodily harm less than murder and remand this matter for resentencing consistent with this opinion. We do not retain jurisdiction.

BECKERING, P.J., and WHITBECK and M. J. KELLY, JJ., concurred.

---

[32] See *id.*

[33] See *Jackson*, 487 Mich at 792.