# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

EDDIE HUGHES,

Defendant-Appellant.

UNPUBLISHED
November 10, 2015

No. 322707
Eaton Circuit Court
LC No. 13-020350-FH

Before: GADOLA, P.J., and HOEKSTRA and M. J. KELLY, JJ.

PER CURIAM.

Defendant, Eddie Hughes, appeals by right his jury convictions of unlawful imprisonment, MCL 750.349b, aggravated domestic violence, second offense, MCL 750.81a(3), resisting, obstructing, or assaulting a police officer, MCL 750.81d(1), and witness intimidation, MCL 750.122(7)(b). The jury acquitted Hughes of an additional charge, assault by strangulation. MCL 750.84(1)(b). The trial court sentenced Hughes as a fourth habitual offender, MCL 769.12, to serve concurrent prison terms of 19 to 40 years for unlawful imprisonment, three to five years for aggravated domestic violence, and four to 15 years for resisting, obstructing, or assaulting a police officer, which were to be served consecutive to a prison term of 76 months to 25 years for witness intimidation. We conclude that Hughes has not identified any error warranting a new trial or resentencing. Accordingly, we affirm.

## I. BASIC FACTS

In September 2013, Katherine Martin was with Hughes at her apartment. Martin stated that she was dating Hughes at the time. Hughes was talking on the phone with his friend, who was repairing Hughes' car. Martin told Hughes that there was not enough money to pay for the repairs; Hughes' friend apparently hung up on Hughes after overhearing the comment.

Hughes began to argue with Martin about their finances and Hughes then slapped Martin, knocking her glasses off. They began to struggle and Martin tried to leave the apartment, but Hughes pulled her back inside the apartment by her hair. A neighbor saw Hughes dragging Martin back into the apartment and called the police department. Martin testified that Hughes forced her into the bathroom and kicked her in the ribs. She said she later tried to run outside through the apartment's sliding back door, but Hughes caught her and choked her until she lost consciousness. Martin testified that she heard knocking on the door when she regained

-1-

consciousness, and she looked out the window and saw a police officer. Martin informed the officer that Hughes had run out the back, and then opened the front door for the officers.

Two officers ran toward the end of the building, where they saw Hughes running toward them. One officer, who was in full uniform, testified that he ordered Hughes to stop and get on the ground, but Hughes turned around and ran. The officer pursued him and ordered him to stop, but Hughes went back inside the apartment and locked the sliding glass door. Another officer, who had already entered the apartment, drew his Taser, and ordered Hughes to reopen the sliding door and get on the ground. Hughes complied, and the officer arrested him and advised him of his rights. Hughes told officers that he had been arguing with Martin over money and told her that he was going to leave her. He stated that Martin caused her own injuries by hitting herself in the face with a bowl.

Before trial, Hughes wrote several letters to Martin encouraging her not to cooperate with authorities, not to come to court, not to testify, or to testify that she caused her own injuries. He also encouraged Martin to testify that they were not dating and that he did not live with her. Hughes' letters also provided Martin with stories she could tell to explain the incident. Martin gave the letters to officers. Hughes admitted that he wrote the letters and they were placed into evidence at trial. Hughes also made several phone calls to Martin from jail with similar themes, and the recordings of the phone calls were admitted and played for the jury.

## II. EXPERT TESTIMONY

### A. STANDARD OF REVIEW

Hughes first argues that the trial court erred by allowing an expert witness to testify about battered spouse syndrome, which gave a false impression that there was a history of abuse. This Court reviews a trial court's decision to allow expert testimony for an abuse of discretion. *Woodard v Custer*, 476 Mich 545, 557; 719 NW2d 842 (2006). However, because Hughes' lawyer did not object to the expert on this basis, our review is for plain error. *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008).

### B. ANALYSIS

Expert testimony on battered spouse syndrome is admissible when it is "relevant and helpful" to explain "a complainant's actions, such as prolonged endurance of physical abuse accompanied by attempts at hiding or minimizing the abuse, delays in reporting the abuse, or recanting allegations of abuse." *People v Christel*, 449 Mich 578, 580; 537 NW2d 194 (1995). "However, the expert may not opine whether the complainant is a battered woman, may not testify that [the] defendant was a batterer or guilty of the instant charge, and may not comment on the complainant's truthfulness." *Id.*

In this case, the expert's testimony addressed the general dynamics of domestic violence, the tactics of abusers, and misconceptions about the behaviors of victims. The witness placed her testimony in the context of the Duluth Model of domestic assault and emphasized that abusers would seek power and control over victims. The expert never testified specifically about Martin or Hughes.

-2-

The admission of battered spouse syndrome evidence is limited to explaining specific behaviors brought out at trial where the jury might otherwise misconstrue the behaviors. *Id.* at 592-593. Martin's trial testimony was not consistent with her testimony at the preliminary examination, and Hughes' lawyer used those inconsistencies to impeach Martin. The expert's testimony helped explain Martin's inconsistent behavior, which might otherwise have been difficult for the jury to comprehend. For example, the expert explained that victims of abuse sometimes lie or minimize the abuse to protect the abuser. This testimony helped to explain why Martin minimized Hughes' abuse at the preliminary examination because, as Martin explained at trial, she tried to make the relationship "sound better than what it was."

In any event, even if the trial court erred by allowing the expert to testify, Hughes has not shown that it affected the outcome of the proceedings. See *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). There was significant evidence implicating Hughes. Martin's testimony plainly implicated Hughes, but the neighbor's sister also testified that she saw Hughes wrap his arm around Martin's neck and forcefully pull her back into the apartment by her hair. A neighbor also saw Martin's feet, which appeared "lifeless," hanging out of the apartment's screen door, which prompted the neighbor to call the police department. Additionally, the physician who treated Martin testified that it would have been "kinda tough" for Martin to inflict her facial injuries on herself, and he agreed that it was unlikely that all the injuries were self-inflicted. In addition, Hughes' letters and calls plainly implicated him. Given this evidence, any error was harmless. *Id.*

## III. SUFFICIENCY OF THE EVIDENCE

### A. STANDARD OF REVIEW

Hughes next contends that there was insufficient evidence to convict him of unlawful imprisonment or resisting, obstructing, or assaulting a police officer. This Court reviews de novo a defendant's challenge to the sufficiency of the evidence. *People v Cline*, 276 Mich App 634, 642; 741 NW2d 563 (2007). When reviewing a challenge to the sufficiency of the evidence, this Court reviews "the evidence in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *People v Robinson*, 475 Mich 1, 5; 715 NW2d 44 (2006).

### B. UNLAWFUL IMPRISONMENT

A person commits unlawful imprisonment when "he or she knowingly restrains another person," in relevant part, "to facilitate the commission of another felony or to facilitate flight after commission of another felony." MCL 750.349b(1)(c). To restrain someone means "to forcibly restrict a person's movements or to forcibly confine the person so as to interfere with that person's liberty without that person's consent or without lawful authority." MCL 750.349b(3)(a). Moreover, the restraint "does not have to exist for any particular length of time and may be related or incidental to the commission of other criminal acts." *Id.*

Martin testified that Hughes restrained her by pulling her back into the apartment by her hair when she tried to leave. The neighbor's sister also testified that she saw Hughes with his arm around Martin's neck, and saw him pull Martin inside the apartment by her hair. Martin

also testified that Hughes restrained her by forcing her into the bathroom and kicking her. Finally, she said Hughes choked her until she passed out when she tried to exit the apartment. This testimony was sufficient to permit the jury to find that Hughes restrained Martin by interfering with her liberty without consent or lawful authority.

From Martin's testimony, a reasonable jury could also find that Hughes restrained Martin in order to facilitate his continued abuse, which amounted to aggravated domestic violence. See MCL 750.81a(3). In fact, Hughes' own testimony established that he hit Martin. Additionally, although the jury did not find him guilty of the felony of assault by strangulation, MCL 750.84(1)(b), the jury could still determine that he restrained Martin to facilitate strangling her. See *People v Vaugh*, 409 Mich 463, 465; 295 NW2d 354 (1980) (noting that a jury may render inconsistent verdicts). Thus, evaluating the evidence in the light most favorable to the prosecution, there was sufficient evidence to support the jury's finding that Hughes was guilty of unlawful imprisonment beyond a reasonable doubt.

## C. RESISTING, OBSTRUCTING, OR ASSAULTING A POLICE OFFICER

A person who "assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties is guilty of a felony . . . ." MCL 750.81d(1). The term 'obstruct' "includes the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command." MCL 750.81d(7)(a).

In this case, an officer testified that he saw Hughes running and told him to stop and get on the ground, but Hughes turned and ran back to the apartment. The officer testified that he was in uniform when he gave the order. He then pursued Hughes and again ordered him to stop, but Hughes entered the apartment and locked the door. This testimony was sufficient to establish that Hughes knew or should have known that the officer was a police officer performing his duty and that Hughes knowingly failed to comply with a lawful command. See MCL 750.81d(7)(a). There was sufficient evidence to support this conviction.

## IV. SENTENCING VARIABLES

Hughes next contends that the trial court erred when it scored 10 points under offense variable (OV) 10 of the sentencing guidelines and erred when it scored 15 points under OV 19.

As for OV 10, Hughes claims that the evidence showed that he was not in a domestic relationship with Martin. Under MCL 777.40(1)(b), the trial court must score 10 points under OV 10 if "[t]he offender exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or her authority status." To qualify as a domestic relationship under OV 10 there must be a familial or cohabitating relationship. *People v Jamison*, 292 Mich App 440, 447; 807 NW2d 427 (2011).

The trial court noted that Martin characterized her relationship with Hughes as a dating relationship and that Hughes had told his brother at the time that he was going to break up with Martin, which evidence showed that Hughes and Martin were still dating at the time. The court also pointed out that Hughes admitted at trial that he was living with Martin at the time of the assault and that he had moved in with her in May. More specifically, when asked whether he

was a resident at Martin's home, Hughes testified: "I resided there, but I wasn't no resident." The court also relied on Hughes' testimony that he and Martin had prior to the incident been in bed together and that he referred to Martin's apartment as "our home," indicating that it was a shared space. Hughes also testified at trial that he and Martin "promised ourself to each other in marriage."

Taken together, the evidence supports the conclusion that Hughes and Martin were in a relationship and cohabitating. The trial court properly scored 10 points under OV 10.

Hughes also contends that the trial court erred when it scored 15 points under OV 19. Under MCL 777.49(b), the court must score 15 points under OV 19, if the "offender used force or the threat of force against another person or the property of another person to interfere with, attempt to interfere with, or that results in the interference with the administration of justice or the rendering of emergency services."

The evidence that Hughes restrained Martin and prevented her from obtaining help from the officers, even if only for a short time, was sufficient to support a score of 15 points under this variable. Moreover, there is no requirement that the emergency services involved be for medical emergencies. The trial court did not err when it scored OV 19 at 15 points.

Hughes has not identified any error warranting a new trial or resentencing.

Affirmed.

/s/ Michael F. Gadola
/s/ Joel P. Hoekstra
/s/ Michael J. Kelly

-5-