# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

            Plaintiff-Appellee,

v

BILLIE GENE TOBLER,

            Defendant-Appellant.

UNPUBLISHED
March 23, 2017

No. 330638
Livingston Circuit Court
LC No. 15-022508-FH

---

Before: BECKERING, P.J., and O'CONNELL and, BORRELLO JJ.

PER CURIAM.

Defendant pleaded no contest to a charge of assault by strangulation, MCL 750.84(1)(b), and fourth habitual offender, MCL 769.12, in exchange for which the State dismissed charges of possession of a controlled substance (marijuana), MCL 333.7403(2)(d), and bribing/intimidating/interfering with witnesses, MCL 750.122(7)(a). Pursuant to the plea agreement, defendant was to be sentenced within the guidelines. In accordance with that plea agreement, the trial court sentenced defendant to a term of 9 to 30 years in prison. Defendant appeals pursuant to leave granted, [1] alleging that as a result of errors in calculating his Offense Variables, defendant received a higher sentence. For the reasons set forth in this opinion, we vacate defendant's sentence and remand to the trial court for resentencing.

## I. BACKGROUND

After meeting defendant "through an online dating service," Rebecca Jenkins and defendant spent the 2014 holiday season in Michigan, primarily staying at her parents' home. The couple spent New Year's Eve at the home of Jenkin's friends. At the preliminary examination, Jenkins testified that sometime between 2:00 and 4:00 a.m. on January 1, 2015, defendant choked her and when he let her go, she left the room. However, she returned to the room and after she and defendant fought, he choked her again. According to Jenkins, the couple left the friends' home between 6:00 and 7:00 a.m. on January 1, 2015 driving to a Speedway to get cigarettes, then went to a McDonalds to get coffee, and then "stopped at a park" where

---

[1] See *People v Tobler*, unpublished order of the Court of Appeals, entered January 22, 2016 (Docket No. 330638).

defendant became angry and "grabbed the back of [Jenkin's] head[,] . . . grabbed [her] hair and pulled [her] back," "[t]owards him," "ripp[ing her] hair" "out" and refusing to "let go until [she] told him [that she] loved him."

Jenkins said that she tried to deescalate the situation and that she and defendant went to a "BP" for more cigarettes, went to a Taco Bell for food, and returned to the friends' home to pick up forgotten items. Then, she testified, they drove to a WalMart where she excused herself, went to the restroom, and called 911. The presentence investigation report (PSIR) indicates that defendant initially told the responding officer that his name was "John," but that he then provided his legal name, and that Jenkins reported being "choked . . . twice" and "grabbed [by] her hair." Ultimately, defendant pleaded no contest to one count of assault by strangulation as a fourth habitual offender.

On August 11, 2015, defendant pleaded nolo contendere before Livingston District Court Judge Carol Sue Reader, acting as a circuit court judge, to assault by strangulation. He also admitted his status as a four-time habitual offender. The prosecutor agreed to dismiss the marijuana possession and witness intimidation charges and to a sentence within the guidelines, in exchange for defendant's plea.

Defendant waived his right to be sentenced in front of the judge who took his plea and as a consequence appeared before Livingston County Circuit Judge Michael P. Hatty on September 17, 2015 for sentencing. At sentencing, defendant objected to the 50-point score assigned to Offense Variable (OV) 7, reflecting that the victim had been treated with sadism, torture or excessive brutality or conduct designed to substantially increase the fear and anxiety suffered by the victim. According to defendant, the variable was erroneously scored because the conduct identified as causing the victim's fear and humiliation was not part of the strangulation offense because it occurred several hours later, because the victim was never "unlawfully imprisoned" and because defendant denied that the conduct occurred.

The trial court judge denied the scoring challenging with the following explanation:

> All right. I'm gonna leave OV 50 (sic) here and I'm gonna tell you why. I think as a – he – they were at somebody else's house. It was – I think this was a continuum for this purpose of – of the – OV – Of OV 7 and 50 points being awarded. So your challenge of seven is denied.

Defense counsel challenged the scoring of OV 7 on alternative grounds, and again the trial court again denied the scoring challenge, stating:

> But for purposes of OV 7, I think that the conduct here and – alleged and committed and exhibited upon this woman does amount to torture or excessive brutality of conduct designed to substantially increase fear and anxiety of the victim – the victim suffered during this offense. Having the – being strangled and having her hair pulled I think is in the – sufficient here to warrant 50 points on OV 7 as it's set forth in the manual.

Defendant next challenged the 10-point score assigned to OV 10. Defendant denied that there was any exploitation involved in his criminal act.

The trial court rejected this scoring challenge with the following explanation:

> Had – 10 is appropriate in this Court's view. Had these folks not been in a domestic relationship this defendant would not have been able to abuse this woman. So I think extracting words out of her it ultimately led to – I mean after – either before or after he – he assaulted her, you know, he's …

Defendant was sentenced as indicated above. This appeal then ensued.

## II. ANALYSIS

On appeal, defendant argues that the trial court erred in its scoring of OV7, 10 and 19. Defendant preserved his objection to the scoring of OV 7 and OV 10. We review preserved challenges to a trial court's factual findings underlying its OV scoring for clear error and review de novo whether those facts support the OV scoring. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). Defendant failed to preserve his challenge to the scoring of OV 19. Therefore, we review this claim for plain error. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

Sentencing courts must "refer[ ] to the record" when scoring the guidelines' sentencing variables. *People v Osantowski*, 481 Mich 103, 111; 748 NW2d 799 (2008). The record "includ[es], but [is] not limited to, the contents of a presentence investigation report, admissions made by a defendant during a plea proceeding, or testimony taken at a preliminary examination . . . ." *People v Ratkov*, 201 Mich App 123, 125; 505 NW2d 886 (1993). The sentencing court "may [make] reasonable inferences arising from the record evidence." *People v Earl*, 297 Mich App 104, 109; 822 NW2d 271 (2012). All findings must be supported by a preponderance of the evidence. *Osantowski*, 481 Mich at 111. Defendants are "entitled to be sentenced . . . on the basis of accurate information." *People v Francisco*, 474 Mich 82, 88; 711 NW2d 44 (2006). Therefore, if a sentencing court makes "a scoring error" or relies upon "inaccurate information" to calculate a defendant's guideline minimum sentencing range and sentences the defendant, this Court must remand for resentencing. *Id*. As observed by our Supreme Court:

> [d]etermining whether a trial court properly scored sentencing variables is a two-step process. First, the trial court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. [*People v Hardy*, 494 Mich 430, 438 (2013).] The clear error standard asks whether the appellate court is left with a definite and firm conviction that a mistake has been made. See *Douglas v Allstate Ins Co*, 492 Mich 241, 256-257 (2012). Second, the appellate court considers de novo "[w]hether the facts, as found, are adequate to satisfy the scoring conditions prescribed by the statute . . . ." *Hardy*, 494 Mich at 438. *People v Marshall*, 495 Mich 983; 843 NW2d 925 (2014).

### A. OV 7

OV 7 governs "aggravated physical abuse." MCL 777.37(1). The trial court must assign 50 points to this variable if a defendant either treated the victim with (a) "sadism," (b) "torture,"

(c) "excessive brutality," or (d) "similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." MCL 777.37(1)(a). When scoring OV 7, the trial court " 'must . . . giv[e] consideration to the sentencing offense alone.' " *People v Thompson*, 314 Mich App 703, 710; 887 NW2d 650 (2016), quoting *People v McGraw*, 484 Mich 120, 133; 771 NW2d 655 (2009) (applying this rule to OV 9) (altered here). "Reading the provisions of MCL 777.1 *et seq* [the legislative sentencing guidelines] in harmony suggests that the offense variables are scored by reference only to the sentencing offense, except where specifically provided otherwise." *McGraw*, 484 Mich at 129. OV 7 contains no such exception. See MCL 777.37; *Thompson*, 314 Mich App at 711. Rather, it specifically refers to a defendant's conduct " 'during the offense.' " *Thompson*, 314 Mich App at 711, quoting MCL 777.37(1)(a). Accordingly, when scoring OV 7, the trial court may only "consider conduct occurring during the criminal offense." *Id*. at 712.

The *Thompson* Court explicitly rejected the argument that trial courts should undertake a "transactional-approach" that involves "examining 'a continuum of the defendant's conduct . . . far beyond the acts that satisfy the elements of the sentencing offense' " and "rejected the argument 'that the Legislature intended sentencing courts to consider a defendant's entire criminal transaction when scoring' " OVs. *Id*. at 713-715, quoting *McGraw*, 484 Mich at 124, 128 (omission added). This applies to a defendant's conduct that occurred before, see *id*. at 717-718, and after, *McGraw*, 484 Mich at 122-123, the sentencing offense.

From the PSIR relied on by the trial court when accessing points for OV 7 we glean the following information:

> On January 1, 2015, Trooper Keller was dispatched to WalMart regarding a domestic assault complaint. He had been advised that the defendant had choked Rebecca Jenkins earlier in the day, and that she was in the restroom at WalMart while the defendant was waiting outside the restroom for her. The trooper located the defendant, who stated that his name was "John." The trooper confronted him, and the defendant provided his legal name, and noted that his fiancée, identified as Ms. Jenkins, was in the restroom. He denied that anything physical occurred between them, and did not know why she would call the police from the restroom.

> The trooper then made contact with Ms. Jenkins in the restroom. She was visibly shaking, and crying. She stated that earlier in the day, the defendant had choked her twice, and attacked her while they were at a friend's home. Then after they left, while driving, the defendant was yelling at her, calling her "awful names" and refused to allow her to exit the vehicle. When she tried to do so, the defendant grabbed her hair on the back of the head and physically kept her in the vehicle, pulling some of it from her head. They have been dating for three months. While en route, Ms. Jenskins asked him to stop at WalMart so she could use the restroom, and they entered the store together. It was from the restroom that Ms. Jenkins called 911, which she used as an excuse to do so.

> A small bruise to her eyelid and red marks on her neck and face were observed by the trooper. At this time, the defendant was taken into custody. A

search of his person revealed 5 grams of marijuana. When questioned, the defendant denied striking Ms. Jenkins.

Ms. Jenkins written statement reflects that the defendant had assaulted her in the past, and when he had hold of her hair, he would not release her hair until she told him that she loved him.

The trial court scored OV 7 at 50 points because:

the conduct here . . . alleged and committed and exhibited upon [Jenkins] does amount to torture or excessive brutality or conduct designed to substantially increase fear and anxiety of the victim—the victim suffered during this offense. Having the—being strangled **and having her hair pulled** I think is in the— sufficient here to warrant 50 points on OV 7 as it's set forth in the manual. [Emphasis added.]

On appeal, defendant argues that OV 7 is an offense specific variable and therefore a sentencing judge is limited to considering conduct undertaken during the sentencing offense. Defendant is correct. The factual basis sufficient to sustain defendant's plea did not include the fact that defendant pulled Jenkins' hair. Additionally, from the PSIR, we cannot glean any facts which could lead us to conclude that pulling Jenkins' hair was part of defendant's sentencing offense. From the preliminary examination transcript the record reveals that Jenkins testified that defendant choked her between 2:00 and 4:00 a.m., the pair fought, defendant choked her again, she went to the her friends' garage, she went to a different floor in the house apart from defendant in an attempt to sleep, the pair left between 6:00 and 7:00 a.m., the pair went to a gas station, the pair went to a McDonalds, and *then* the pair "stopped at a park" where defendant pulled her hair. Accordingly, any hair pulling occurred long *after*—not during—the sentencing offense. *McGraw*, 484 Mich at 122-123. Therefore, the trial court should have scored OV 7 at zero points as the hair pulling was not "conduct [that] occurr[ed] during the criminal offense." *Thompson*, 314 Mich App at 712.

B. OV 10

Next, defendant argues that the trial court erred in scoring OV 10. OV 10 requires a score of 10 points if the defendant "exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or [defendant] abused his or her authority status." MCL 777.40(1)(b). The statute defines "vulnerability" as a "readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation." MCL 777.40(3)(c). The statute defines "exploit[ation]" as "manipulat[ing] a victim for selfish or unethical purposes." MCL 777.40(3)(b). This occurs when a defendant assaults a victim during a date. *People v Dillard*, 303 Mich App 372, 375-376, 380-381; 845 NW2d 518 (2013). Defendant argued that he did not exploit a domestic relationship but like in *Dillard*, 303 Mich App at 375-376, 380-381, he essentially exploited Jenkins by assaulting her while on a date. A trial judge must assess 10 points where "[t]he exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or her authority status[.]" MCL 777.40(1)(b). "The mere existence of 1 or more of these factors described in subsection (1) does not automatically equate with victim vulnerability." MCL 777.40(2). To "exploit" is to

manipulate a victim for selfish or unethical purposes. MCL 777.40(3)(b); *People v Cannon*, 481 Mich 152, 157; 749 NW2d 257 (2008). "Vulnerability" is the readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation. MCL 777.40(3)(c); *Cannon, supra*.

The probation agent who completed the PSIR assigned a 10-point score to OV 10 because: "Mr. Tobler and the victim were in a dating relationship for a short period of time." The trial court found that a 10-point score was appropriate because the "dating relationship" presented the opportunity to assault the victim. However, "not . . . simply any type of dating relationship, past or present, meets the requirements of OV 10." *People v Jamison*, 292 Mich App 440, 447; 807 NW2d 427 (2011). Rather, the term "domestic relationship" has been defined by this Court as consisting of "a familial or cohabitating relationship." *Id*. at 554; see also *People v Jamison*, 292 Mich App 440, 447; 807 NW2d 427 (2011). In the present case, there is no indication in the PSIR that defendant and the victim cohabitated. Rather, all references indicate only that the couple was "dating." Absent evidence of cohabitation, it was error for the trial court to access 10 points. However, there is some indication in the preliminary examination that the parties were living together, but it is unclear for how long and whether their living arrangement constituted more than the trial court's characterization of a "dating relationship."[2]

### C. OV 19

Next, defendant alleges the trial court erred in scoring OV 19. Defendant did not object to the trial court's scoring of OV 19 at the time of sentencing, hence this error is unpreserved. As previously stated, we review this claim for plain error. *Carines*, 460 Mich at763.

OV 19 pertains to a "threat to the security of a penal institution or court" or "interference with the administration of justice or the rendering of emergency services." MCL 777.49. "The phrase 'interfered with or attempted to interfere with the administration of justice' is broad." *People v Steele*, 283 Mich App 472, 492; 769 NW2d 256 (2009), quoting *People v Barbee*, 470 Mich 283, 286; 681 NW2d 348 (2004). OV 19 "is generally scored for conduct that constitutes an attempt to avoid being caught and held accountable for the sentencing offense." *People v Sours*, ___ Mich App ___; ___ NW2d ___ (2016) (Docket No. 326291), slip op at 2. The trial court must assign 15 points when a defendant "used force or the threat of force against another person or the property of another person to interfere with, attempt to interfere with, or that results in the interference with the administration of justice or the rendering of emergency services" and assign 10 points when a defendant "otherwise interfered with or attempted to interfere with the administration of justice." MCL 777.49. Ten points can be assigned when a defendant otherwise "attempt[s] to deceive the police during [an] investigation," *People v Hershey*, 303 Mich App 330, 343-344; 844 NW2d 127 (2013).

Our review of the record presented leads us to conclude that defendant has not and cannot show plain error. Relative to OV 19, the PSIR contains the following information:

---

[2] On remand, the trial court may wish to inquire as to whether the relationship between defendant and Jenkins constituted more than a "dating relationship."

On January 1, 2015, Trooper Keller was dispatched to WalMart regarding a domestic assault complaint. He had been advised that the defendant had choked Rebecca Jenkins earlier in the day, and that she was in the restroom at WalMart while the defendant was waiting outside the restroom for her. The trooper located the defendant, who stated that his name was "John." The trooper confronted him, and the defendant provided his legal name, and noted that his fiancée, identified as Ms. Jenkins, was in the restroom. He denied that anything physical occurred between them, and did not know why she would call the police from the restroom.

Based on this information, the trial court scored assigned 10 points to OV 19 because defendant provided the officer "with a false name, an attempt to interfere with the administration of justice." Such conduct supports a 10 point score. *Hershey*, 303 Mich App at 344. Accordingly, defendant is not entitled to relief on this issue.

### III. CONCLUSION

Because defendant was sentenced within a minimum guideline sentencing range calculated based on an inaccurate interpretation of a relevant statute, *Francisco*, 474 Mich at 88, defendant's sentence must be vacated and this case must be remanded for resentencing under properly scored guidelines, see *People v Detloff*, 489 Mich 955, 955; 798 NW2d 506 (2011).

We vacate defendant's sentence and remand for resentencing. We do not retain jurisdiction.

/s/ Jane M. Beckering
/s/ Stephen L. Borrello