*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DEMARGIO DIERRE GREER,

        Defendant-Appellant.

UNPUBLISHED
March 28, 2019

Nos. 340335; 340336
Wayne Circuit Court
LC Nos. 17-003072-01-FH;
         17-002357-01-FH

Before: MURRAY, C.J., and GADOLA and TUKEL, JJ.

PER CURIAM.

In Docket No. 340335, defendant appeals as of right his jury trial conviction of witness intimidation, MCL 750.122(7)(b). Defendant was sentenced, as a third habitual offender, MCL 769.11, to 34 months to 20 years' imprisonment. In Docket No. 340336, defendant appeals as of right his jury trial convictions of third-degree criminal sexual conduct ("CSC-III"), MCL 750.520d(1)(b) (force or coercion to achieve sexual penetration), and assault with intent to do great bodily harm less than murder ("AWIGBH"), MCL 750.84. Defendant was sentenced, as a third habitual offender, MCL 769.11, to 10 to 30 years' imprisonment for the CSC-III conviction, and 7½ to 20 years' imprisonment for the AWIGBH conviction.

We affirm in both appeals.

These consolidated cases[1] arise out of defendant's physical and sexual assault of the victim, who at the time was defendant's girlfriend. Defendant and the victim lived together in an apartment in Detroit with their five children. On February 24, 2017, the victim went shopping with her sister, who recently received a tax refund and wanted to spend the money.

---

[1] This Court consolidated defendant's appeals in *People v Greer*, unpublished order of the Court of Appeals, entered October 11, 2017 (Docket Nos. 340335; 340336).

Defendant and the victim got into an altercation when the victim arrived home later that night. Defendant was convinced that the victim was keeping the tax refund money from him and demanded that the victim give him the money. The victim attempted to explain that it was her sister who had received the tax refund, but defendant accused her of lying. Defendant beat the victim about her head, face, and torso with a heavy object that was later identified as a handheld air compressor, which weighed approximately 10 to 12 pounds. Defendant then sexually assaulted the victim.

## I. EVIDENTIARY HEARING AND NEW TRIAL

Defendant contends that the trial court abused its discretion by denying his motion for an evidentiary hearing and a new trial based on claims of ineffective assistance of counsel and the discovery of new evidence.

"A trial court's decision to hold an evidentiary hearing is generally reviewed for an abuse of discretion." *People v Danto*, 294 Mich App 596, 613; 822 NW2d 600 (2011). An abuse of discretion occurs when a trial court's decision " 'falls outside the range of reasonable and principled outcomes.' " *People v Franklin*, 500 Mich 92, 100; 894 NW2d 561 (2017) (citation omitted). "The facts supporting the grant or denial of an evidentiary hearing are reviewed for clear error, and the application of the law to those facts is reviewed de novo." *Id*. Factual findings are considered to be "clearly erroneous if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *Id*. (quotation marks and citation omitted). Additionally, with regard to defendant's claims of ineffective assistance of counsel, "this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Dixon-Bey*, 321 Mich App 490, 515; 909 NW2d 458 (2017), lv pending.

## A. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant first argues that the trial court abused its discretion by denying his motion for an evidentiary hearing related to his claim of the ineffective assistance of counsel. We disagree.

*People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973), the leading case discussing evidentiary hearings for ineffective assistance of counsel claims, states that an evidentiary hearing should be granted if the defendant's claim of ineffective assistance of counsel is dependent on facts that are not contained in the record. *Id*. at 442-443. " 'A convicted person who attacks the adequacy of the representation he received at his trial must prove his claim.' " *Id*. (citation omitted). An evidentiary hearing should be granted by the trial court only if the defendant "set[s] forth . . . facts that would require development of a record to determine if defense counsel was ineffective." *People v Williams*, 275 Mich App 194, 200; 737 NW2d 797 (2007).

Defendant asserts that an evidentiary hearing was warranted for his claims that he was denied the effective assistance of counsel. Specifically, defendant claims that he was denied the effective assistance of counsel when defense counsel failed to object to the admission of a recording of a telephone call, which had been made to the Detroit Police Department, by an individual who claimed to be the victim and who attempted to get the charges against defendant

dropped. At trial, the victim identified the person who spoke in the recorded telephone call as defendant's sister. Defendant also states that he was denied the effective assistance of counsel because his attorney failed to object to the introduction of medical records showing evidence of past incidents of abuse against the victim, failed to introduce evidence of text messages sent between the victim and defendant's brother, failed to produce full recordings of defendant's telephone calls to the victim, and failed to insist that the jury receive a transcript of the victim's trial testimony during jury deliberations. However, beyond the bare premises of his arguments, defendant does not set forth supporting facts that would provide a clear rationale for requesting an evidentiary hearing as to those issues. Specifically, defendant has not provided compelling evidence that facts pertinent to his ineffective assistance of counsel claims could *only* be uncovered in a *Ginther* hearing. Thus, the trial court properly determined that an evidentiary hearing was unnecessary and did not abuse its discretion by denying defendant's motion for an evidentiary hearing regarding his ineffective assistance of counsel claims.

Moreover, we hold that defendant was not denied the effective assistance of counsel. To establish a claim of ineffective assistance of counsel, a defendant is required to demonstrate "that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). Defense counsel is presumed to be effective, *People v Frazier*, 478 Mich 231, 243; 733 NW2d 713 (2007), and defendant must be able to overcome the presumption that defense counsel's performance constituted sound trial strategy, *People v Riley*, 468 Mich 135, 140; 659 NW2d 611 (2003). Importantly, a " 'court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.' " *People v Reed*, 449 Mich 375, 400-401; 535 NW2d 496 (1995), quoting *Strickland v Washington*, 466 US 668, 697; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

First, defendant argues that his attorney was ineffective for failing to object to the admission of his sister's call to the police. Defendant asserts that defense counsel should have objected to evidence and testimony related to the telephone call because the call was not relevant to whether he was guilty of witness intimidation. MRE 401, which governs the relevance of evidence, defines "relevant evidence" as

> evidence having any tendency to make the existence of any fact that is of
> consequence to the determination of the action more probable or less probable
> than it would be without the evidence.

Defendant argues that the evidence was not relevant because no evidence was produced suggesting that he personally ordered his sister to call the Detroit Police Department on his behalf.

"To be relevant, evidence need only have a tendency to make the existence of *any fact that is of consequence* more or less probable." *Dixon-Bey*, 321 Mich App at 513. The testimony regarding the telephone call was introduced in support of the argument that defendant was guilty

of witness intimidation. " 'Evidence that a defendant made efforts to influence [a] . . . witness is relevant if it shows consciousness of guilt.' " *Id*. (citation omitted). There was no direct evidence that defendant and his sister conspired to fabricate the fraudulent telephone call to the police, as neither of them testified to that fact nor did any third-party overhear them making such arrangements. Nevertheless, under the facts of this case, where defendant had been arrested and charged with an offense and was facing trial, the jury properly was permitted to infer that defendant's sister would not and did not act on her own in asking the police to stop the prosecution through impersonation of the victim. A jury determination that defendant was behind the making of the telephone call would have constituted evidence of his consciousness of guilt, which itself is relevant to proving the charges. See *People v Coleman*, 210 Mich App 1, 4; 532 NW2d 885 (1995). Furthermore, evidence that defendant sought to fraudulently have the charges dismissed, but failed to accomplish that objective, served to establish his motive to intimidate the victim into also seeking dismissal of the charges, refusing to testify, or to testify falsely, and thus properly served to bolster the charge of witness intimidation, which was based on other evidence detailed below. Thus, counsel was not ineffective for failing to object to that evidence, as it was properly admitted. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.").

Moreover, defendant cannot show the requisite level of prejudice to merit relief. As noted, additional evidence showed that defendant called the victim directly and threatened that the police and child protective services ("CPS") workers would take the victim's children away if she continued to remain involved in the case against him. Defendant encouraged the victim to drop the charges against him or refuse to testify. This evidence supported defendant's conviction for witness intimidation, and it is unlikely that the jury would have acquitted defendant even if defense counsel had successfully objected to the introduction of evidence regarding the telephone call allegedly made by his sister.

Defendant also argues that he was denied the effective assistance of counsel because counsel failed to object to the introduction of medical records containing evidence that the victim had been physically abused by defendant in the past. Defendant argues that the evidence should have been excluded because it was not relevant and that he was unfairly prejudiced by its inclusion. As previously stated, evidence is relevant if it tends to make any fact of consequence to the determination of the action more or less probable. *Id*. Evidence of past abuse is relevant because it tends to show that defendant and the victim engaged in a pattern of violent behavior toward each other. See MCL 768.27b(1) (allowing other acts of domestic violence to be admitted into evidence "for any purpose for which it is relevant"). This evidence lends credence to the prosecution's argument that the victim was involved in a cycle of domestic violence with defendant and that defendant physically and sexually assaulted the victim in their home. Such an objection would have been meritless, and defense counsel is not ineffective for failing to raise a meritless objection. See *Ericksen*, 288 Mich App 192 at 201.

Defendant also argues that his counsel was ineffective for failing to offer evidence of text messages sent between the victim and defendant's brother. Defendant contends that such text messages should have been admitted because they supported the defense that the victim fabricated the charges against him. However, the record indicates that defense counsel did attempt to introduce such text messages. Defense counsel successfully introduced a text message

-4-

suggesting that the victim was romantically involved with defendant's brother and falsified the charges against defendant. The majority of the text messages were excluded pursuant to the rape-shield statute, MCL 750.520j. Contrary to defendant's bare assertion, the record shows that defense counsel did attempt to introduce the text messages and argued against the prosecution's view that they should be excluded. Therefore, defendant's claim that his trial counsel did not try to admit the evidence is without merit, and defendant's claim of ineffective assistance fails. See *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999) (stating that the party claiming ineffective assistance "has the burden of establishing the factual predicate for his claim"). Moreover, defendant cannot establish prejudice because the trial court admitted a text message from the victim to defendant's brother, which stated in part, "I got him locked up because I wanted to be with you." Defense counsel thus had the factual foundation before the jury with which to argue that the victim falsified her claim.

Next, defendant argues that defense counsel was ineffective for failing to seek the admission of full recordings of telephone calls made during defendant's time in jail. Defendant argues that only excerpts of the recorded telephone calls were admitted in the trial court and that these recordings gave a biased and inaccurate picture of the conversations that took place between defendant and the victim. Decisions regarding the admission of evidence are "presumed to be matters of trial strategy." *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). There is a strong presumption "that counsel engaged in sound trial strategy," *id.*, and defendant does not make an effort to overcome this presumption by explaining what the full recordings would have shown. Defense counsel may have chosen not to offer the full recordings because they could have further incriminated defendant. Since this is a matter of trial strategy, this Court will not second-guess defense counsel's strategic decisions or otherwise "assess counsel's competence with the benefit of hindsight." *Id.*

Finally, defendant also argues that defense counsel was ineffective for failing to object when the trial court denied the jury's request for a transcript of the victim's testimony. The jury requested a transcript of the victim's testimony during jury deliberations, to which the trial court responded, "It would take several days to prepare transcripts. Try to use your collective memories and notes to remember her testimony."

Whether to give a transcript or recording of testimony to the jury is within the trial court's discretion, and the trial court may refuse unreasonable requests. MCR 2.513(P). Further, "[t]he court may order the jury to deliberate further without the requested review, as long as the possibility of having the testimony or evidence reviewed at a later time is not foreclosed." *Id.* Here, the jury was advised to use its memory and notes to recall the testimony. And, importantly, the instruction did not preclude the possibility that transcripts could be reviewed at a later time. Indeed, the trial court's reference to it taking "several days to prepare [the] transcripts" implies that the jury might have been able to review such transcripts after several more days had passed. In light of these facts, the trial court's response to the jury's request was reasonable. Moreover, assuming that the court's response was erroneous and that defense counsel erred by failing to object, defendant cannot demonstrate prejudice because it is not reasonably likely that had the jury reviewed a copy of the victim's testimony, which was not favorable to defendant, the transcribed testimony would have convinced the jury to render a verdict in favor of defendant. Thus, defendant has failed to show that he is entitled to relief on this basis.

## B. NEWLY DISCOVERED EVIDENCE

Defendant also argues that the trial court abused its discretion by failing to grant defendant's motion for an evidentiary hearing or a new trial based on newly discovered evidence. Defendant claims that a letter and a sworn affidavit written by the victim, which stated that she had consensual sex with defendant, attempted to get the charges against defendant dropped, and was coerced into testifying by the police and CPS workers, constituted newly discovered evidence warranting a new trial. We disagree.

" 'Motions for a new trial on the ground of newly-discovered evidence are looked upon with disfavor, and the cases where . . . there was an abuse of discretion in denying a motion based on such grounds are few and far between.' " *People v Rao*, 491 Mich 271, 279-280; 815 NW2d 105 (2012) (citation omitted). In order for a new trial to be properly granted on the basis of newly discovered evidence, a defendant is required to demonstrate the following:

> (1) the evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) the party could not, using reasonable diligence, have discovered and produced the evidence at trial; and (4) the new evidence makes a different result probable on retrial. [*People v Grissom*, 492 Mich 296, 313; 821 NW2d 50 (2012) (quotation marks and citation omitted).]

Defendant contends that the evidence meets all four aforementioned criteria. However, the evidence regarding the victim's attempts to drop the charges and the alleged interference by police and CPS workers does not constitute new evidence that could not have been discovered before trial. The letter and affidavit stated that the victim "tried to go to the court and tell them I didn't want to pursue the charges," and that a police officer told her that "CPS was going to get involved . . . so I testified against [defendant]." However, evidence regarding both issues was discovered and produced at trial. The victim testified that the police and CPS workers came to her apartment after defendant was arrested, but that it was *defendant* who suggested that the police were going to take her children away. Defendant also suggested to the victim that she should drop the charges against him or refuse to appear at trial. Sergeant Kimberly Gabriel of the Detroit Police Department attested that the police had not told the victim that she would lose her children if she did not testify against defendant. Because it was previously discussed at trial, this evidence is not newly discovered evidence that would warrant an evidentiary hearing or a new trial.

Defendant further argues that the victim's affidavit contains an admission that she had consensual sex with defendant after he physically assaulted her. The affidavit states that the victim and defendant "got into a big argument and fight and . . . had sex after [they] were done." Defendant argues that the outcome of the case would be different if the victim, as the sole complainant, were to recant the testimony that she was sexually assaulted by defendant. However, " '[a]s a rule, the court is not impressed by the recanting affidavits of witnesses who attempt to show that they perjured themselves at the trial,' " and the ultimate determination whether the recantation testimony is credible rests with the trial court. *People v Norfleet*, 317 Mich App 649, 661; 897 NW2d 195 (2016) (citation omitted).

Defendant asks this Court to remand and direct the trial court to hold an evidentiary hearing to determine whether, by sending the letter and submitting the affidavit, the victim intended to recant her trial testimony regarding defendant's actions. However, both parties and the trial court already agreed that the victim's affidavit and letter constituted recantation testimony. The parties discussed the victim's credibility as a witness and whether the affidavit and letter constituted trustworthy recantation testimony.

The trial court accepted that the letter and the affidavit constituted recantation testimony because they purported to show that defendant and the victim had consensual sex and that the victim attempted to drop the charges against defendant. The trial court observed that defendant, who had already been convicted of witness intimidation, MCL 750.122(7)(b), again appeared to be attempting to convince the victim to recant her trial testimony. The trial court focused specifically on a portion of the victim's letter, in which the victim asked defendant, "What do you mean you know how we can fix this?" The trial court stated that it seemed to indicate that defendant was telling the victim, "Change your story, recant so you can get me out of these charges." "[W]here newly discovered evidence takes the form of recantation testimony, it is traditionally regarded as suspect and untrustworthy." *People v Canter*, 197 Mich App 550, 559; 496 NW2d 336 (1992). Contrary to defendant's contention, the trial court already determined that the affidavit and letter contained recantation testimony but that the testimony was not credible. In general, this Court must defer to the trial court's credibility determinations. *Id*. at 560.

Defendant nevertheless argues that the trial court should be required to hold a full evidentiary hearing regarding the recantation testimony in order to allow the victim an opportunity to testify regarding the contents of the letter and affidavit. We conclude that such an evidentiary hearing is not necessary. This Court has stated that "where a motion for a new trial is predicated upon the affidavit of a recanting witness, the court should have had the opportunity to observe and hear the witness at the original trial or at a hearing on the motion before passing upon the witness's credibility." *People v Blair*, 44 Mich App 469, 471; 205 NW2d 183 (1973). Because the trial court had ample opportunity to evaluate the victim's credibility when she testified at trial, it was not necessary to hold an additional evidentiary hearing. The trial court's credibility determinations also were supported by evidence of questionable circumstances surrounding the submission of the affidavit, including the fact that defendant was convicted of witness intimidation, MCL 750.122(7)(b), for his previous attempts to coerce the victim into dropping the charges against him. Moreover, the victim's letter suggested that defendant had concocted a plan to "fix" unspecified problems related to his conviction. Given these circumstances, the trial court did not abuse its discretion by finding that the victim's recantation was not credible and denying defendant's motion for an evidentiary hearing and a new trial on the basis of newly discovered evidence.

Defendant also avers that he is entitled to a new trial on the basis of the aforementioned newly discovered evidence. However, as the trial court found, the recantation testimony contained in the victim's letter and affidavit was not credible. As previously noted, "due regard must be given to the trial court's superior opportunity to appraise the credibility of the recanting witness." *Canter*, 197 Mich App at 559. The fact that the recantation testimony was not credible compels the conclusion that had the evidence been admitted, a different result would not have

been probable. Accordingly, the trial court did not abuse its discretion by denying defendant's motion for an evidentiary hearing and a new trial.

## II. JOINDER OF CHARGES

Defendant next argues that he was denied a fair trial when the trial court granted the prosecution's motion for joinder of the charges against him. We disagree.

Joinder of charges is generally permissible if they are related. Charges are considered related if they are based on the same conduct or transaction, or a series of connected acts, or a series of acts constituting parts of a single scheme or plan. MCR 6.120(B)(1)(a)-(c).[2] "Whether [a] defendant's charges are related is a question of law that we review de novo." *People v Girard*, 269 Mich App 15, 17; 709 NW2d 229 (2005). The improper joinder of charges can be considered a constitutional violation if it results in the deprivation of a defendant's right to a fair trial. *People v Williams*, 483 Mich 226, 231; 769 NW2d 605 (2009). A trial court's decision to grant a motion for joinder is reviewed for an abuse of discretion. *Girard*, 269 Mich App at 17.

Defendant was initially charged with three counts of CSC-III, MCL 750.520d(1)(b), unlawful imprisonment, MCL 750.349b, AWIGBH, MCL 750.84, and assault with a dangerous weapon ("felonious assault"), MCL 750.82. When the prosecution discovered that defendant called the victim on the phone and attempted to convince her to drop the charges against him or

---

[2] MCR 6.120(B) provides in full:

(B) Postcharging Permissive Joinder or Severance. On its own initiative, the motion of a party, or the stipulation of all parties, except as provided in [MCR 6.120(C)], the court may join offenses charged in two or more informations or indictments against a single defendant, or sever offenses charged in a single information or indictment against a single defendant, when appropriate to promote fairness to the parties and a fair determination of the defendant's guilt or innocence of each offense.

(1) Joinder is appropriate if the offenses are related. For purposes of this rule, offenses are related if they are based on

(a) the same conduct or transaction, or

(b) a series of connected acts, or

(c) a series of acts constituting parts of a single scheme or plan.

(2) Other relevant factors include the timeliness of the motion, the drain on the parties' resources, the potential for confusion or prejudice stemming from either the number of charges or the complexity or nature of the evidence, the potential for harassment, the convenience of witnesses, and the parties' readiness for trial.

to fail to appear in court for trial, defendant also was charged separately with witness intimidation, MCL 750.122(7)(b). The trial court later granted a motion for joinder filed by the prosecution.

Defendant first contends that the charges should not have been joined because they were not related. "To determine whether joinder is permissible, a trial court must first find the relevant facts and then must decide whether those facts constitute 'related' offenses for which joinder is appropriate." *Williams*, 483 Mich at 231. At a hearing regarding the prosecution's motion for joinder, the trial court determined that the witnesses and facts involved in both of defendant's cases were the same and that defendant's witness intimidation charge was "directly related to the other case" and involved "an attempt to get [the victim] not to come to court and testify."

The trial court correctly determined that the charges were eligible for joinder because they arose out of "a series of connected acts" as contemplated in MCR 6.120(B)(1)(b). Defendant committed a crime and then attempted to cover up that crime by pressuring the victim to drop the charges or to refuse to testify. The act of witness intimidation is a direct result of the other crimes committed against the victim, for which defendant was charged, and thus, the charges in both cases were directly related.

Defendant also argues that he was denied a fair trial because the joinder of charges was unfairly prejudicial. MCR 6.120(B)(2) affords the trial court discretion to deny the joinder of charges based on "the potential for confusion or prejudice." See also *Girard*, 269 Mich App at 18 (stating that a trial court ultimately has "discretion to [join or] sever related charges on grounds of unfair prejudice"). Here, the trial court instructed the jury that the charges against defendant were distinct offenses. The trial court further directed the jury to "consider each crime separately in light of all the evidence in the case," and that defendant could be found "guilty or not guilty of all, or guilty or not guilty of any one or any combination of the[] crimes." Therefore, any prejudice that may have resulted from the joinder of charges was properly addressed by the trial court, and defendant's right to a fair trial was not infringed upon by the joinder of the charges against him. See *Williams*, 483 Mich at 244 (stating that the potential for undue prejudice arising from the joinder of charges can be limited or prevented if a trial court instructs the jury that it "must consider each crime separately" and "may find the defendant guilty of all or any combination of the[] crimes or not guilty").

## III. RIGHT TO PRESENT A DEFENSE

Defendant also argues that the trial court denied him a fair trial and the opportunity to present a defense by granting the prosecution's motion in limine to exclude possible evidence of a sexual relationship between the victim and defendant's brother, pursuant to the rape-shield statute, MCL 750.520j. We disagree.

A trial court's evidentiary rulings are reviewed by this Court for an abuse of discretion. *People v Benton*, 294 Mich App 191, 195; 817 NW2d 599 (2011). An abuse of discretion occurs if the result reached by the trial court falls outside the range of ordinary and principled outcomes. *Id.* This Court reviews de novo whether defendant was denied the constitutional right to present a defense. *People v Bosca*, 310 Mich App 1, 47; 871 NW2d 307 (2015). Preliminary legal

issues, such as "the interpretation of the rules of evidence and the effect of constitutional provisions," are also reviewed de novo. *Benton*, 294 Mich App at 195.

During trial, defense counsel engaged in the following line of questioning with the victim:

> *Q*. Okay. How would you describe your relationship with [defendant's brother]?
>
> *A*. He's my sister's baby's father.
>
> *Q*. Have you ever had sexual relations with him?
>
> *A*. No.

When the trial resumed the following day, the prosecution made a motion in limine to exclude the introduction of additional evidence regarding the victim's sexual relationships pursuant to the rape-shield statute, MCL 750.520j. The trial court granted the prosecution's motion in limine to exclude such evidence and forbade defense counsel from asking any further questions regarding the victim's sexual relationships. However, the trial court and the prosecution agreed that defendant's brother could testify regarding text messages that he received from the victim, so long as the text messages were not explicitly sexual in nature.

Defendant asserts that evidence suggesting that the victim had a sexual relationship with his brother would have helped defense counsel impeach the victim and show that she had a motive to fabricate the charges against defendant. In doing so, defendant contends that the rape-shield statute does not preclude the admission of evidence suggesting that the victim had engaged in a sexual relationship with defendant's brother. The rape-shield statute states, in pertinent part:

> (1) Evidence of specific instances of the victim's sexual conduct . . . shall not be admitted under sections 520b to 520g unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:
>
> (a) Evidence of the victim's past sexual conduct with the actor.
>
> (b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease. [*People v Sharpe*, 319 Mich App 153, 161-162; 899 NW2d 787 (2017), quoting MCL 750.520j.]

In general, "[t]he rape-shield law, with certain specific exceptions, was designed to exclude evidence of the victim's sexual conduct with persons *other than defendant*." *Id*. at 163 (quotation marks and citation omitted). However, "evidence that is not admissible under one of the [two] statutory exceptions may nevertheless be relevant and admissible to preserve a defendant's Sixth Amendment right of confrontation." *Benton*, 294 Mich App at 197.

"For example, where the defendant proffers evidence of a complainant's prior sexual conduct for the narrow purpose of showing the complaining witness' bias, this would almost always be material and should be admitted. Moreover, in certain circumstances, evidence of a complainant's sexual conduct may also be probative of a complainant's ulterior motive for making a false charge." [*Benton*, 294 Mich App at 197, quoting *People v Hackett*, 421 Mich 338, 348; 365 NW2d 120 (1984).]

Here, evidence showing that the victim engaged in a sexual relationship with defendant's brother may have been both relevant to, and probative of, the victim's motive for allegedly fabricating charges against defendant. Thus, the trial court arguably abused its discretion by determining that the rape-shield statute precluded the introduction of evidence that the victim had a sexual relationship with defendant's brother. However, the exclusion of the specific evidence that the victim allegedly engaged in a sexual relationship with defendant's brother did not ultimately "undermine[] the reliability of the verdict," and did not deprive defendant of a defense. *People v Lukity*, 460 Mich 484, 495; 596 NW2d 607 (1999). Although evidence of sexual interactions between the victim and defendant's brother were excluded, defendant was still permitted to introduce evidence of a romantic relationship between the two. During trial, defendant's brother testified that after defendant was arrested, the victim sent him a text message stating, "I got him locked up because I wanted to be with you. Dang, all he wanted to do is run the streets and find him a new Boo." Defendant's brother testified that the victim was referring to "locking up" defendant in prison. The text message, which was read into the record, suggested that the victim pressed charges against defendant because she wanted to have a romantic relationship with defendant's brother. The introduction of this evidence indicates that defendant was not deprived of a defense; he was able to argue that the victim fabricated the charges based on an ulterior motive without the introduction of evidence related to a sexual relationship with his brother. Thus, the exclusion of the evidence regarding the victim's sexual history did not deprive defendant of a defense or a fair trial.

## IV. OFFENSE VARIABLE 10

Defendant argues that the trial court erred when it assessed offense variable ("OV") 10 at 10 points. We disagree.

The trial court's factual determinations pertaining to the scoring of the offense variables "are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Gloster*, 499 Mich 199, 204; 880 NW2d 776 (2016). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).

OV 10 concerns the "exploitation of a vulnerable victim." MCL 777.40(1). Ten points are assessed under OV 10 if "[t]he offender exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or her authority status." MCL 777.40(1)(b). The parties briefly discussed OV 10 at sentencing. The prosecution's position was that 10 points should be assessed under OV 10 "because of the exploitation of the domestic relationship." Conversely, defendant argued that zero points should

be assessed because "there was no vulnerability to this victim." In response, the trial court stated that "there was evidence that [defendant and the victim] were in a domestic relationship and that [defendant's crimes were] part of an exploitation of the domestic relationship . . . . Sounds like they had some history in the past as well and that this was part of that happening."

Defendant argues that 10 points should not have been assessed under OV 10 because he did not commit a crime that specifically involved the exploitation of the "domestic relationship" that he shared with the victim. "[T]o qualify as a 'domestic relationship,' there must be a familial or cohabiting relationship" in place between two individuals. *People v Jamison*, 292 Mich App 440, 447; 807 NW2d 427 (2011). A domestic relationship undoubtedly existed here. Defendant and the victim were in a romantic relationship and shared an apartment, where they lived with their children. However, defendant challenges the presumption created by the fact that he and the victim were in a relationship and sharing an apartment and contends that the mere existence of a domestic relationship between two individuals does not necessitate the assessment of 10 points under OV 10.

In support of his argument, defendant directs this panel to MCL 777.40(2), which states that "[t]he mere existence of 1 or more factors described in subsection (1)," including the exploitation of a victim's vulnerability based on a shared domestic relationship, "does not automatically equate with victim vulnerability." According to the statute, the term " '[e]xploit' means to manipulate a victim for selfish or unethical purposes," and the term " '[v]ulnerability' means the readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation." MCL 777.40(3)(b) and (c). The evidence shows that defendant exploited the domestic relationship that he had with the victim when he sexually and physically assaulted her. Defendant attempted to manipulate and coerce the victim into giving him tax refund money he though she had received, by physically assaulting her and continued to do so even after she explained that it was her sister who had received the refund, not the victim. After it became obvious that the victim did not have any money, defendant sexually assaulted her in their bedroom. Defendant knew about the tax refund money as a result of the close relationship he shared with the victim, and attempted to take the tax refund money away from her by force, using verbal and physical threats in an attempt to get what he wanted. When the victim failed to produce the money, defendant punished her by severely beating her and sexually assaulting her. Defendant would not have had knowledge about the money, or close access to the victim, if not for their shared domestic relationship. Thus, the trial court did not err in scoring 10 points for OV 10, and defendant's claim lacks merit.

Affirmed.

/s/ Christopher M. Murray
/s/ Michael F. Gadola
/s/ Jonathan Tukel

-12-